FILED

2018 Nov-08 PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

CALVIN S. CUMMINGS,
        Petitioner,

vs.                              Case No.:   _____

FEDERAL BUREAU OF PRISONS,       1:18-cv-01850-RDP-JHE
        Respondent.


## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
## 28 U.S.C. § 2241 PETITION


Comes Now, Calvin S. Cummings ("Cummings"), pro se, submits his petition challenging the [F.C.I. Jesup's][1] prison disciplinary actions resulting in the deprivation of, among other things, Good Conduct Credit Time.[2]

This dispute centers around the unreliability of the NIK Test for so-called narcotics and the procedure for such not being followed, resulting in an arbitrary "false-positive, thus, perpetuating the unreliability of said Kit. All in violation of the Due Process Clause of the Fifth Amendment.


---

1. Petitioner is presently housed at F.C.I. Talladega, AL. 35160.

2. Appendix A, delineates the lost of privileges and good credit time loss.

Furthermore, Mr. Cummings remains in his posture of having
NO narcotics as stated herein and throughout, to completion, the
Administrative Remedy Grievance process of the F.B.O.P. (Remedy
No.s:  920873-A2 and 920875-A2).

## FACTUAL BACKGROUND

In the month of September of 2017, Officer Hopson conducted
a room search of the room I was occupying at F.C.I. Jesup; by
placing a window blocker to obstruct the view of anyone to see
in the room.  This lasted for approximately 20-minutes.

Subsequently, I was brought to the lieutenant's office based
upon items Officer Hopson said he retrieved from out of my room.
I was pat searched then questioned by the Lt. in charge.  Said
Lt. asked me where did I get the K-2 (drugs) from.  I related
that I did not know what he was talking about.  Upon him bringing
my attention to what he was referring to on his desk, I immediately
told him that that was not K-2 but indeed tea and coffee (dried
up) on a napkin.

I was ordered to provide a urine sample to see if I had drugs
in my system.  A negative result was the outcome.

I was escorted to lock-up (SHU - Special Housing Unit) to
be detained.  Thereafter, I was served an incident report indica-
ting the dried up tea and coffee ("tea-coffee") was tested and
it signaled for amphetamine.  I advised Lt. Wilson that I wanted
an outside lab to perform a test on the item because the NIK test

2

is incorrect and unreliable for its result on the tea-coffee on the napkin.  I was denied my request.

On September 26, 2017, my request for an outside lab source was reiterated to DHO who flatly said that was not going to happen as those test cost too much.   My response was how could I properly defend myself when I'm saying that the reliance on the NIK Test is incorrect for the items (tea-coffee).[3]

I was dismissed on the request and sanctioned as outlined in Appendix A.

While in SHU, SHU Lt. Vandiver came to inform me that I was in the process of receiving another incident report.  He stated that the property officer, Red Cloud, discovered what seemed to be a Greeting Card stained from an unknown substance/liquid which, as I was told, registered for amphetamine.

Because I received that Greeting Card years ago, I asked that the Card be sent to an outside Lab to be tested.  I got an negative response as well from DHO [hearing] with the same request.  It was the same response as the first DHO ...  My defense was denied due to the F.B.O.P. [F.C.I. Jesup] refusal to pay for an outside Lab to test the item.

---

3.   It is known throughout the F.B.O.P., in the course of time, that teas has been registering for amphetamines and like positives.  Green tea has been a concern in the F.B.O.P. and was removed years ago.  This applies equally to teas of certain distinctions.

## ARGUMENT

### Unreliability

This cause of action arise out of prison authorities per-forming a procedure which has been proven unreliable across the spectrum of courts that dealt with the issue.

The following is not an exhaustive list but these courts has determined that the NIK test kit to be unreliable: FBOP v. Henson, 213 F.3d 897 (5th Cir. 2000); Lamping v. Walraven, 30 Fed. Appx. (6th Cir. 2002); Terry v. Dept. of Public Safety & Corr. Sevices, 2012 U.S. Dist. LEXIS 90715 (Md.)(positive for "amphetamine" but contradicted by outside lab). Cf., Jenkins v. FBOP, 2018 U.S. Dist. LEXIS 27588 (11th Cir.).

It must be asserted here that Mr. Cummings, to prove his innocence to the "false-positive" drug result, continuously re-quested an outside lab to test the innocuous items and or, item(s) having an adverse affect on the NIK test that is provided by the institution inadvertantly.

In addition tot he courts' findings of unreliability for the NIK test, the courts recognized that the standard of guilt by the DHO is for "some evidence". See, Anderson v. Coleman, 2016 U.S. App. LEXIS 7989 (11th Cir. 2016)(citing Superintendent Mass. Corr. Inst. Walpole v. Hill, 472 U.S. 445 (1985). With the history of producing false-positive and by being contradicted by outside labs, the NIK test results cannot constitute the "some evidence" standard in context of disciplinary hearings.  "[A]

4

test which produced frequent incorrect results could fail to con-
stitute "some evidence" under the Hill standard.  See also, Higgs
v. Bland, 888 F.2d 443 (6th Cir. 1989);  Jenkins, supra., in this
circuit.

Wherefore, the NIK test is unreliable especially when it
is not backed up by an outside lab as frequently requested by
Mr. Cummings, for his due process rights and concerns.

**Arbitrary Enforcement**

The administrating of the NIK test was/is an improper pro-
cedure.  In the write ups (incident reports), it stated, "The
material was tested;  with a positive reading for amphetamine
utilizing NIK test kits A and U", respectively.

This procedure is incorrect and creates arbitrary enforcement
of "false-positive" results for, in this case, reading for amphe-
tamine.

Specifically, Test A --Marquis Reagent #800-6071 A of the
NIK (Narcotics Indentification System), must always be followed
by Test B #800-6072 Nitric Reagent, because the two act together.
Following that, Test F #800-6076 Acid Neutralizer, is required
upon completion of each test (A, B and U #800-6087).  See, Appen-
dix B.  Test U #800-6087 is used prior to Test A results.  If
Staff gets a reddish color on this test, it is not a positive
(moreso a negative) and it results in amphetamine such as the

5

here.  Following this procedure, staff MUST then do Test W #800-
6088.  Test W should be done when a reddish color appears in Test
U.  It is also used in a brown test result.

Pursuant to proper procedures in testing, NIK tests are not
designed for use with liquid samples.  However, liquids may be
tested by placing the tip of an NIK Substance Loading Device,
liquids or a 1 centimeter square piece of paper into the liquid.
Staff must then remove and allow to air dry.  They then place
the dry paper into the test pack and proceed with the test as
instructed.  The choice of paper is critical.  This is because
unscented, uncolored filter paper is ideal.  Staff should never
use brown paper, hand towels, or newsprint.

As clearly indicated here, staff did not follow the procedures
when performingthe NIK test kit.  It must be noted that the DHO
officer/report stated that "The NIK system of Narcotics Identifi-
cation is based upon a Polytesting procedure whereby a suspect
material is subjected to a **series of progressively discriminating
screening test.**  The sequential results of **several tests provide**
a high degree of certainty that the suspect material is in fact
what the NIK Polytesting System indicates it to be."  (Emphasis
added).

Clearly, this series of progressively discriminating screening
tests was not conducted in this case.  There definitely was NO
sequential results of several tests as demonstrated above.

Wherefore due process was violated in this case.

6

**Relief for Expungement**

The solution to the current issue is dispositive under the doctrine of mootness.  This doctrine has been expressly used in this Court under the same due process concerns --unreliability of the NIK test kit and the improper procedures conducted (without an outside lab test), creating arbitrary "false-positives"--, in two (2) cases:  Jenkins, supra., and Harris v. FBOP, 1:18-cv-01159-ACA-SGC.

Article III of the Constitution limits the jurisdiction of federal courts to the consideration of "cases or controversies." U.S. Const. Art. III § 2.  The doctrine of mootness is derived from this limitation because "an action that is moot cannot be characterized as an active case or controversey.." Adler v. Duval Cnty.Sch.Bd., 112 F.3s 1475, 1477 (11th Cir. 1997).

This case is straightforward and quite dispositive on the doctrine of mootness by the Respondent by the expungment of Mr. Cummings record with regards to the disciplinary incident in question and reinstate all privileges and loss of good time credit.  See, Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Autho., 162 F.3d 627, 629 (11th Cir. 1998)("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief"). If a case (or claim) is or becomes moot, the court lacks subject-matter jursdiction over that case of claim.  See, SEC v. Med. Comm.for Human Rights, 404 U.S. 403, 407 (1972).

Wherefore, Mr. Cummings moves the Respondent to dismiss this cause of action accordingly.

## CONCLUSION

Wherefore, for the foregoing, Mr. Cummings' record with regards to the relevant case herein must be expunged and the reinstatement of all privilege and loss of good time credit under the doctrine of mootness.

Respectfully Submitted

Calvin S. Cummings
#34652-018

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been hand-delivered to the appropriate prison staff for legal mail, on this 10-6-18 day of November, 2018; an original and two (2) copies for filing in this Court.

Calvin S. Cummings
#34652-018
FCI Talladega
PMB 1000
Talladega, AL. 35160

8

```
   TDGFU        *       INMATE DISCIPLINE DATA        *    06-13-2018
PAGE 001        *    CHRONOLOGICAL DISCIPLINARY RECORD  *    14:05:45

REGISTER NO: 34652-018 NAME..: CUMMINGS, CALVIN S
FUNCTION...: PRT      FORMAT: CHRONO    LIMIT TO ___ MOS PRIOR TO 06-13-2018
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3127223 - SANCTIONED INCIDENT DATE/TIME: 05-22-2018 0730
UDC HEARING DATE/TIME: 05-25-2018 0855
FACL/UDC/CHAIRPERSON.: TDG/UNIT G/C.HUMPHREY
REPORT REMARKS.......: NO COMMENT
   305  POSSESSING UNAUTHORIZED ITEM - FREQ: 1
        LP COMM   / 15 DAYS / CS
        COMP:   LAW:   LOSS OF COMMISSARY 15 DAYS RESTORE JUNE 9 2018
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3035814 - SANCTIONED INCIDENT DATE/TIME: 09-20-2017 1230
DHO HEARING DATE/TIME: 09-26-2017 1115        DHO REPT DEL: 10-10-2017 0905
FACL/CHAIRPERSON.....: JES/ASPINWALL
APPEAL CASE NUMBER(S): 920873
REPORT REMARKS.......: INMATE DENIED PAPER FOUND IN HIS PROPERTY TESTED
                       POSITIVE FOR AMPHETAMINE
   113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: DDC
        DIS GCT   / 13 DAYS / CS
        COMP:010 LAW:P   DISALLOW 13 DAYS GOOD CONDUCT TIME
        FF NVGCT  / 28 DAYS / CS
        COMP:010 LAW:P   FORFEIT 28 DAYS NON-VESTED GOOD CONDUCT TIME
        LP VISIT  / 6 MONTHS / CS
        COMP:   LAW:   6 MONTHS LOSS OF VISITATION CONSECUTIVE TO 3032708
                       BEGINNING 09-26-18 THRU 03-25-19
        LP VISITRS / 6 MONTHS / CS
        COMP:   LAW:   6 MONTHS VISITATION RESTRICTION CONSECUTIVE TO
                       3032708 BEGINNING 03-26-2020 THRU 09-25-2020
------------------------------------------------------------------------------
REPORT NUMBER/STATUS.: 3032708 - SANCTIONED INCIDENT DATE/TIME: 09-12-2017 1755
DHO HEARING DATE/TIME: 09-26-2017 1100        DHO REPT DEL: 10-10-2017 0910
FACL/CHAIRPERSON.....: JES/ASPINWALL
APPEAL CASE NUMBER(S): 920875
REPORT REMARKS.......: INMATE DENIED PAPER FOUND IN HIS LOCKER TESTED
                       POSITIVE FOR AMPHETAMINE
   113  POSSESSING DRUGS/ALCOHOL - FREQ: 1 ATI: DDC
        DIS GCT   / 41 DAYS / CS
        COMP:010 LAW:P   DISALLOW 41 DAYS GOOD CONDUCT TIME
        DS        / 15 DAYS / CS / SUSPENDED 180 DAYS
        COMP:   LAW:   15 DAYS DISCIPLINARY SEGREGATION SUSPENDED PENDING
                       180 DAYS CLEAR CONDUCT
        LP VISIT  / 1 YEARS / CS
        COMP:   LAW:   1 YEAR LOSS OF VISITATION BEGINNING 09-26-2017
                       THROUGH 09-25-2018
        LP VISITRS / 1 YEARS / CS
        COMP:   LAW:   1 YEAR VISITATION RESTRICTION (IMMEDIATE FAMILY
                       ONLY) BEGINNING 03-26-2019 THROUGH 03-25-2020


G0002      MORE PAGES TO FOLLOW . . .
```

# IDENTIDRUG™ CHART
for use with the NIK® Polytesting System

IMPORTANT: Follow the Polytesting flow chart. Do not jump from sequence to sequence; i.e. follow the arrows from one test to another, noting the results.



= Color shift change

NC = No color

- - - = Color change





---

### General Polytesting Procedures

Always begin Polytesting with Test A and continue from test to test until a positive or negative result is obtained. Tests E, L, M, N, P, Q, R and T are exceptions to this rule and are designed as standalone tests.

Before testing can begin, it is important to classify the material using one of the classifications below:

**Tablets or other hard materials** - Crush a part of the tablet into powder and insert into the test pouch.

**Capsules** - Open the capsule, remove part of the powder and insert into the test pouch.

**Powders** - insert powder directly into the test pouch

**Plant material** - Begin testing with Test E. Use only a few leaf fragments.

**Suspected Brown or Black Tar Heroin** - Begin testing with Test L.

**Liquid samples** - NIK™ tests are NOT designed for use with liquid samples. However, liquids may be tested by placing the tip of an NIK® SUBSTANCE LOADING DEVICE or a 1cm square (roughly 1/2" square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. The choice of paper is critical. Unscented, uncolored filter paper is ideal. NEVER use brown paper, hand towels or newsprint.

### Determining the amount of suspect material

The amount of suspect material needed to make a successful test varies with the amount and purity of the material. With the exception of plant material, gelatin squares, etc., you should begin by using the loading device to collect an amount of powdered suspect material that would fit inside this circle: ☐ If the resulting colors are too weak, use more material; if too intense, use less.

### Safety Precautions

Many of the tests in the NIK® Polytesting System contain strong acid(s) or bases. Always insert a portion of Pack F (Acid Neutralizer) into the test pack after testing and before disposal of the used test pack.

In the event that a test pack or chemical is ingested, seek immediate medical attention. If chemicals come into contact with the skin or eyes, wash the skin thoroughly with soap and water. Flush eyes with water and seek immediate medical attention.

Store NIK® tests in a cool, dark area. Heat will speed up the action of the chemicals in each test, and extreme cold will slow them down. Appropriate care should be exercised. Do NOT store in direct sunlight. Technical Assistance is available during business hours at (800) 347-1200.

### Breaking the Chemical Ampoules

Care should be taken when breaking the glass ampoules in each test. Press firmly in the center of the harness to break each ampoule. Once the glass has broken, do NOT continue to crush the glass ampoules, as this may result in injury.

### Interpretation of Test Results

For any test, there are three important factors you should look for:

1. The color or lack of color
2. The color change
3. The location of colors in the test pouch

---

   

NOTE - Each of our NIK Test Instructions are also available in French, German & Spanish. Please contact one of our Customer Care representatives at (800) 347-1200 to receive a PDF version.

main material - ... fragments.

**Suspected Brown or Black Tar Heroin** - Begin testing with Test L.

**Liquid samples** - NIK® tests are NOT designed for use with liquid samples. However, liquids may be tested by placing the tip of an NIK® SUBSTANCE LOADING DEVICE or a 1cm square (roughly 1/2" square) piece of paper into the liquid. Remove and allow to air dry. Place the dry paper into the test pack and proceed with the test as instructed. The choice of paper is critical. Unscented, uncolored filter paper is ideal. NEVER use brown paper, hand towels or newsprint.

In the even... immediate... with the ski... water. Flusl... attention.

Store NIK®... action of th... slow them... NOT store i... during busi...

  

NOTE - Each of our NIK Test... contact one of our Custome...

| Attachment A | NO. **4938**, Contraband Drug Testing |
|---|---|
| DATE  2/11/2016 | PAGE 3 of 10 |

## § 1010.8    FORMS
(a)    Form #2080, "Request for Test of Suspected Contraband Drugs"

FORM 2080 (5/13)        STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

### REQUEST FOR TEST OF SUSPECTED CONTRABAND DRUGS

| Inmate Name | Number | | Cell |
|---|---|---|---|
| Request made by | Date | | |
| Substance suspected | Approximate amount | | |

Circumstances leading to request

(continue on back if additional space is needed)

| Supervisor receiving request | Date | | |
|---|---|---|---|

| If a capsule, was it inspected at pharmacy?  Yes ☐  No ☐ | Inspected by | Date | Time | Identification |
|---|---|---|---|---|

Substance tested by   *Who tested the kit and substance that time* — *that time*

Results  *( Test USED clp to END )*

Method of testing  *IK kit*

| Was any of the substance left after testing?  Yes ☐  No ☐ | Was remaining substance forwarded to State Police lab?  Yes ☐  No ☐ | Date | Time |
|---|---|---|---|

Manner     Results  *final results*     Date

### CHAIN OF CUSTODY (Starting with the Officer who found the substance)

*certified as* / *drug officer certified* / *nurses certified* / *testing to examine here*

| From _____ | To _____ | Date _____ | Time _____ |
|---|---|---|---|
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |
| From _____ | To _____ | Date _____ | Time _____ |

This form is to be filled out completely. It is to accompany the suspected substance until the substance is tested. After the substance is tested, this form is to be delivered to the office responsible for inmate discipline regardless of the results. If the substance proves to be a contraband drug, a misbehavior report shall be written.

Attachment B

(b)    Form #2081, "Contraband Test Procedure"

FORM 2081 (10/15)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## CONTRABAND TEST PROCEDURE

| Inmate Name | Number | Cell |
|---|---|---|
| Substance Suspected: *What was suspected drug* | Approximate Amount *Collected from inmate* | |

**System of Narcotics Identification used:** [X] The NIK® System    [ ] The NARK® II System

### TESTING SEQUENCE

| Initial Test | Resulting Colors/Color Changes | *This should always be* |
|---|---|---|
| | Indication | *Test A always Orange* |
| Subsequent Test | Resulting Colors/Color Changes | *This should be color after* |
| | Indication | *Orange (Test According to Color)* |
| Subsequent Test | Resulting Colors/Color Changes | *This should be Test B* |
| | Indication | *to confirm the drug is present* |
| Subsequent Test | Resulting Colors/Color Changes | *Test F should be used* |
| | Indication | |
| Subsequent Test | Resulting Colors/Color Changes | |
| | Indication | |

FINAL TESTING RESULTS _____

WAS PROPER AMOUNT OF SUBSTANCE USED?          [ ] YES    [ ] NO

WERE MANUFACTURER'S PROCEDURES FOLLOWED?    [ ] YES    [ ] NO

OPERATOR NAME _____   DATE OF TEST _____   TIME _____

OPERATOR TRAINING CERTIFIED BY _____   DATE OF CERTIFICATION _____

I CERTIFY THAT THE ABOVE IS TRUE AND CORRECT

_____          _____
OPERATOR SIGNATURE                    DATE

(c)   "NIK Public Safety Statement of Scientific Principles"

# NIK® PUBLIC SAFETY
## SYSTEM OF NARCOTICS IDENTIFICATION

NIK® Public Safety developed the NIK® System of Narcotics Identification as a means of rapidly screening and presumptively identifying substances suspected of being abused drugs, narcotics and hallucinogens. Designed to be a completely self-contained system, the kit in its several configurations, provides all necessary elements to perform chemical color tests for the commonly known and most frequently abused narcotics and dangerous drugs.

Each test pack contains the chemical required to perform the desired test in pre-filled, hermetically sealed glass ampoules. This eliminates the need for measuring, mixing and dispensing of reagents while affording a maximum of protection to the investigator. Reagent shelf life is also substantially prolonged by this method of packaging. Chemicals used are ACS grade or better, providing the highest rate of accuracy.

The NIK® System is designed to function as a transportable-mininarcotics identification laboratory. It may be carried with you and is, therefore, available for use wherever and whenever the need may arise.

## COLORIMETRIC CHEMICAL TESTING

The NIK® System employs chemical colorimetric comparison as the means by which narcotics and other controlled substances are screened and presumptively identified. Each test pack contains one or more chemical reagents which will predictably develop a color or a series of colors in the presence of the most commonly known narcotics and dangerous drugs. When the predicted color reaction occurs while following the recommended test sequence, a positive identification is presumed. A positive identification is considered a component of probable cause and generally recognized within our legal system as being presumptive in nature.

## NIK® POLYTESTING SYSTEM

The NIK® System of Narcotics Identification is based upon a poly testing procedure whereby a suspect material is subjected to a series of progressively discriminating screening tests. The results of a single test may or may not yield a valid result. However, the sequential results of several tests, if they all indicate a positive reaction for a particular substance, provides a high degree of certainty that the suspect material is in fact what the NIK® Poly testing System indicates it to be.

Experiments have been and continue to be conducted with hundreds of licit and illicit chemical compounds in a continuing effort to eliminate false positive results. No chemical reagent system, adaptable to field use exists, that will completely eliminate the occurrence of an occasional invalid test result. A complete forensic laboratory would be required to qualitatively identify an unknown suspect substance. In absence of such a laboratory facility, the NIK® System, utilizing the recommended Poly testing procedure, is your best assurance that the presumptive results of a positive identification are what they appear to be.

## NIK® TESTING CAPABILITY

The NIK® System will presumptively identify most substances which fall within the following general groups of abused drugs:

A. Cannabis sativa L.     B. Depressants     C. Hallucinogens
D. Narcotics             E. Stimulants

Attachment C Continued

## NIK® NARCOTICS IDENTIFICATION SYSTEM  -  NIK® TESTS

Test A   Marquis Reagent - for the presumptive identification of Opiates (Morphine, Codeine or Heroin), Demerol, Black Tar, Amphetamine-type compound, including Methamphetamine & Methylenedioxymethamphetamine (MDMA or Ecstacy), Amphetamines and as a general screening agent for other drugs  *The two act together*

Test B   Nitric Acid Reagent - always used with test A for the confirmation of Opiates (Morphine, Codeine or Heroin) and Amphetamine-type compound as well as well as a general screening test for other drugs

Test C   Modified Dille-Koppanyl Reagent - for the presumptive identification of Barbiturates

Test D   Modified Ehrlich's Reagent - for the presumptive identification of LSD (Lysergic Acid Diethylamide)

Test E   Duquenois-Levine Reagent - for the presumptive identification of Marijuana, Hashish and "Hash Oil"

Test G   Modified Scott Reagent - for the presumptive identification of Cocaine, Crack or Free Base

Test H   Proprietary Formula - for the presumptive identification of Methadone

Test I   Proprietary Formula - for the general screening to presumptively identify PMA, Ketamine, Barbiturates and Methadone

Test J   Proprietary Formula - for the presumptive identification of PCP (Phencyclidine)

Test K   Proprietary Formula - for the presumptive identification of Heroin, Black Tar, Codeine and Morphine, (easier to distinguish between the four Opiates, than using test B) -test screens out Methapyrilene and Propoxyphene

Test L   Modified Mecke's Reagent - for the presumptive identification of all forms of Heroin, including White, Brown and Black Tar, and Ecstacy (MDMA), as well as detecting the presence of certain dye combinations designed to give false positives with the Marquis Test (Test A)

Test M   Proprietary Formula - for the presumptive identification of Methaqualone (Quaaludes, Sopor, Somnafac, Opitimll and Parest are the trade names)

Test N   Proprietary Formula - for the presumptive identification of Pentazocine, commonly known under the trade name Talwin Nx or Talacen

Test O   Proprietary Formula - for the presumptive identification of GHB (gammahydroxybytyrate)

Test P   Proprietary Formula - for the presumptive identification of Propoxyphene

Test Q   Proprietary Formula - for the presumptive identification of Ephedrine and Pseudoephedrine

Test R   Proprietary Formula - for the presumptive identification of Valium (Daizepam), Rohpnol (Flunitrazepam) and Methcathinone

Test T   Proprietary Formula - for the presumptive identification of Ketamine

Test U   Proprietary Formula - for the presumptive identification of secondary amines, such as Methamphetamine and MDMA (Ecstasy)

Test W   Proprietary Formula - for the presumptive identification of amphetamines and Methadone, as well as screening for PMA and Ketamine with Test I

Bath Salts     Proprietary formula – for the presumptive identification of synthetic cathinones/MDPV
Test            (Methylenedioxypryrovalerone)

*Test 7   Always used upon completion of each
test (After Test A, B, and U)*